IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHANCE FRIDRIKSSON,

     Plaintiff,

v.                                       CASE NO. 1:21-cv-64-AW-GRJ

ALACHUA COUNTY SHERIFF'S OFFICE,[1]
DEPUTY VILLEGAS,
SERGEANT SUDBURY and
LT. JAMIE SCOTT,

     Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Pending before the Court are two motions filed by two different sets

of Defendants in this Eighth Amendment "failure-to-protect" case brought

under 42 U.S.C. § 1983.  ECF No. 9.

The first motion is a motion for summary judgment by Alachua

County Sheriff's officer Defendants Scott Sudbury ("Sudbury") and Jamie

---

[1] The proper party in this Section 1983 action would not be the Alachua County Sheriff's Office ("ACSO") but rather the ACSO Sheriff.  Fridriksson seeks only monetary damages in this lawsuit. The Sheriff cannot be sued for monetary damages.  *Ballard v. Alachua Cty. Sheriff*, Case No. 1:22-cv-8-AW-GRJ, 2022 WL 527849, *2 (N.D. Fla. Jan. 18, 2022) ("The problem here is that Plaintiff only seeks monetary relief. He does not seek injunctive or declaratory relief. Consequently, Plaintiff's claims against Sheriff Clovis Watson must be dismissed.").  Accordingly, the claims against the Sheriff must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii).

Scott ("Scott").  ECF No. 27.  Sudbury and Scott argue they are entitled to summary judgment because Fridriksson failed to rebut their evidence that they did not have the culpable state of mind necessary to support a deliberate indifference claim and because they are entitled to qualified immunity.

The second motion is a motion to dismiss by Defendant Deputy Villegas ("Villegas"). ECF No. 35.  In this motion, Villegas argues that Fridriksson failed to allege that Villegas had the subjective knowledge needed to state a claim for deliberate indifference and that he, too, is entitled to qualified immunity.

Fridriksson has not responded to either motion, even though the Court gave him several opportunities to do so, warning him that failure to respond would result in a recommendation that this case be dismissed.  It appears, therefore, that Fridriksson has abandoned this case.

For the reasons discussed below, this case is due to be dismissed for failure to prosecute and for failure to comply with a court order.  Separate from dismissal for failure to prosecute summary judgment is due to be granted in favor of Defendants Sudbury and Scott as there is no genuine dispute of material fact regarding Fridriksson's deliberate indifference claim

against these Defendants. Lastly, Villegas' Motion to Dismiss is due to be granted on qualified immunity grounds.

## I.  DISCUSSION

### A.  The case should be dismissed for failure to prosecute and failure to comply with court orders.

On October 25, 2021, the Court issued a Summary Judgment Notice, ECF No. 28, directing Fridriksson to respond to Defendant Sudbury and Scott's Motion for Summary Judgment on or before November 24, 2021, with a sworn counter-affidavit, other witnesses' sworn counter-affidavits, depositions, exhibits.  ECF No. 28 at 1.   The Court cautioned Fridriksson that "(1) failure to respond to the summary judgment motion will indicate that the motion is unopposed; (2) all material facts asserted in the motion will be considered admitted unless controverted by proper evidentiary materials… and (3) Plaintiff may not rely solely on the allegations in the issue pleadings… in opposing the summary judgment motion."  *Id*. at 2.

When Fridriksson failed to respond by the November 24, 2021, deadline, the Court directed him to show cause on or before January 15, 2022, why Defendants' motion should not be granted.  ECF No. 30.  The Court further warned Fridriksson that "failure to comply with the order within the allotted time would result in a recommendation that the motion be

granted as unopposed." *Id*. at 1.  The show cause deadline passed nearly four months ago, and Fridriksson has still not responded.

With respect to Villegas' Motion to Dismiss, after Fridriksson initially failed to respond, the Court issued another show cause order directing him to respond to the motion to dismiss by April 15, 2022.  ECF No. 36 at 2. That deadline has come and gone as well without any response from Fridriksson.

Federal Rule of Civil Procedure 41(b) expressly authorizes the involuntary dismissal of a claim due to a plaintiff's failure to prosecute or abide by court orders or the Federal Rules of Civil Procedure.  *State Exch. Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982) ("The Federal Rules expressly authorize a district court to dismiss a claim, including a counterclaim, or entire action for failure to prosecute or obey a court order or federal rule.") (citations omitted).  "[A] court also has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation." *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (*citing Link v. Wabash R.R.*, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)); *see also Foudy v. Indian River Cty. Sheriff's Office*, 845 F.3d 1117, 1126 (11th Cir. 2017) ("Federal courts

possess an inherent power to dismiss a complaint for failure to comply with a court order.") (citations omitted); *Smith v. HSBC Bank USA, Nat'l Ass'n*, 679 F. App'x 876, 879 (11th Cir. 2017) ("The court's power to dismiss is an inherent aspect of its authority to enforce its orders and insure prompt disposition of lawsuits.") (per curiam) (citation and internal quotation omitted).

In this case, Fridriksson was warned on at least three occasions that his case would be dismissed if he failed to respond to Defendants' motions. Yet, he did not do so. Dismissal of this case is appropriate. *Garrett v. Birmingham Police Dep't*, 769 F. App'x 899, 900-01 (11th Cir. 2019) (per curiam); *Watts v. Ford Motor Co.*, 648 F. App'x 970, 972-73 (11th Cir. 2016) (per curiam).[2]

Before dismissing a *pro se* case, courts must consider whether a

---

[2] A review of the Court's PACER case index reveals that Fridriksson has filed six (6) civil rights complaints in this District and in the Middle District of Florida (including this lawsuit), two of which constitute a strike under the PLRA. *See Fridriksson v. Wooten, et al.*, Case No. 5:20-cv-589 (M.D. Fla.) (dismissed as a strike on Jan. 19, 2021); *Fridriksson v. Wooten, et al.*, Case No. 5:21-cv-74 (M.D. Fla.) (dismissed for failure to state a claim on Aug. 19, 2021, a strike); *see also Fridriksson v. Kyle, et al.*, Case No. 8:17-cv-74 (M.D. Fla.) (dismissed for failure to prosecute on Feb. 27, 2019); *Fridriksson v. Figuero, et al.*, Case No. 3:18-cv-879 (M.D. Fla.) (dismissed for failure to prosecute); *Fridriksson v. Rivera, et al.*, Case No. 1:21-cv-83 (N.D. Fla.) (Show Cause Order to Fridriksson as to why his case should not be dismissed for failing to disclose his litigation history not responded to by the deadline); and *Fridriksson v. Villegas, et al.*, Case No. 1:21-cv-64 (N.D. Fla.) (this lawsuit).

dismissal without prejudice would effectively be with prejudice because of the statute of limitations.  *Stephenson v. Warden*, 554 F. App'x 835, 838 (11th Cir. 2014) (per curiam). Pertinent here, the statute of limitations for claims under Section 1983 for the type of injuries allegedly sustained by Fridriksson is four years. *Ellison v. Lester*, 275 F. App'x 900, 901-02 n.7 (11th Cir. 2008). ("We have held that the four-year statute of limitations… applies to § 1983 claims arising in Florida."). In this lawsuit, Fridriksson complains about events that occurred in March through May of 2021.  ECF No. 6.  Thus, dismissal without prejudice would not bar Fridriksson from refiling this action prior to the expiration of the statute of limitations.

## B.  Independent of Plaintiff's failure to prosecute this action Defendants Sudbury and Scott's motion for summary judgment should be granted and Defendant Villegas' motion to dismiss should be granted.

Because Defendants' motions center around the same or similar set of facts, yet apply different legal standards, the Court will highlight the background facts relevant to each motion and then address the summary judgment evidence filed by Sudbury and Scott. The Court will then address Villegas' Motion to Dismiss and his defense of qualified immunity.

Plaintiff, Chance Fridriksson ("Fridriksson"), proceeding *pro se,* brought this lawsuit for damages he suffered after his cellmate allegedly

physically and sexually assaulted him while he was incarcerated at the

Alachua County jail.  The basis of Fridriksson's constitutional claim is that

Defendant jail officers failed to protect him from an aggressive, sexually

inappropriate and "emotionally unstable" cellmate who attacked him and

that Defendants thereafter failed to provide him with mental health

counseling.[3]  ECF No. 9 at 6-7.  Fridriksson also alleges that Defendants

---

[3]  Construing the Complaint liberally, Fridriksson does not state a medical deliberate indifference claim.  To state a claim of medical deliberate indifference, a plaintiff must allege: (1) a serious medical need; (2) deliberate indifference to that need by the defendants; and (3) causation between the defendants' indifference and the plaintiff's injury. *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (per curiam) (citation omitted).  "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (internal quotation marks and citation omitted

A claim that a prisoner has been deprived of medical attention requires that the prisoner demonstrate (1) "an objectively serious medical need" so grave that, "if left unattended, poses a substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause…."  *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

In this case, Fridriksson alleges only that Defendant prison officers failed to "provide mental health counseling" to him after he was sexually and physically assaulted by his cellmate.  ECF No. 9 at 7.  Fridriksson does not describe his injuries from the assault beyond a lacerated hand.  Moreover, he does not allege that his mental state after the assault was so grave that, if left unattended, it posed a substantial risk of serious harm.  Notably, Fridriksson does not even allege that he ever requested mental health counseling from the Defendants.  Instead, Fridriksson presumes that Defendant prison officers' failure to intuit that he needed mental health counseling was deliberately indifferent.  That does not establish an Eighth Amendment violation.

failed to investigate his assault and later authored a false disciplinary report about the assault that resulted in Fridriksson's losing his jail privileges for thirty (30) days. *Id*. at 6.

For relief, Fridriksson seeks $200,000 in actual and punitive damages. ECF No. 9 at 8. Fridriksson also requests a review and investigation conducted by the Attorney General toward the imposition of fines and the loss of the jail's accreditation. *Id*.

### 1.    *Defendants Subury and Scott are entitled to summary judgment.*

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Pursuant to Rule 56, a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

In the Eleventh Circuit, "[e]ven after *Celotex*, it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.* "Instead, the moving party must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial." *United States v. Four Parcels of Real Property in Green and Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1438 n.19 (11th Cir. 1991).

If the moving party meets its burden, the non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2253. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If, in response, the

non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir. 2000). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted).

"In determining whether genuine issues of material fact exist, [the reviewing court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Rice-Lamar*, 232 F.3d at 840 (*citing Anderson*, 477 U.S. at 255). However, when the record "taken as a whole" could not support a reasonable finding for the non-movant, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Finally, while *pro se* pleadings are liberally construed, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material

to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) (citations omitted). Thus, "[a]lthough [the courts] show leniency to *pro se* litigants, [they] will not serve as de facto counsel, or rewrite an otherwise deficient pleading in order to sustain an action." *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x. 296, 298 (11th Cir. 2009) (citation and internal quotation marks omitted).

In the verified First Amended Complaint Fridriksson alleges that Sudbury and Scott failed to protect Fridriksson by "knowingly housing" him in a cell with an inmate who "acted emotionally unstable".  ECF No. 9 at 6. Fridriksson also attests that, after the cellmate physically and sexually assaulted him—lacerating his hand— the cellmate was put on a "suicide/homicide prevention protocol".  *Id*.

In support of their motion for summary judgment, Sudbury and Scott attest that neither officer had any indication that Fridriksson's cellmate posed a risk of serious harm to Fridriksson, or any other inmate.  Affidavit of Carl Sudbury ("Sudbury Aff."), ECF No. 27-2 ¶ 4; Affidavit of Jamie Scott ("Scott Aff."), ECF No. 27-1 ¶ 4.  Additionally, Sudbury and Scott aver they had no role in determining how inmates at the jail were "classified in terms of how they are housed within the jail and under what conditions."  Sudbury

Aff., ECF No. 27-2 ¶ 3; Scott Aff., ECF No. 27-1 ¶ 3.

Vivian Sims ("Sims"), Classification and Programs Supervisor in the Classification Unit for the Alachua County jail, further attests that Sudbury and Scott "do not participate in the inmate classification or screening process and they do not determine the housing restrictions or special conditions that apply to each inmate…."  Viviam Sims Affidavit ("Sims Aff."), ECF No. 27-3 ¶ 5.  Sims also attests that the cellmate who attacked Fridriksson had been classified by the appropriate prison personnel as "a minimum custody inmate who was being monitored for self-harm statements, gestures and behaviors, and there was no indication that [he] was homicidal or that he was likely to harm others at any time before the alleged incident occurred…."  *Id*. ¶ 4.

Finally, Sudbury and Scott aver that they had no "personal involvement" with either Fridriksson or his cellmate regarding the assault except for their review of the incident report *after* the fact.  Sudbury Aff., ECF No. 27-2 ¶ 5; Scott Aff., ECF No. 27-1 ¶ 5.

Based on the evidence in this record, Fridriksson's claims that Sudbury and Scott failed to protect him from his cellmate in violation of the

Eighth Amendment cannot survive Defendants' Motion for Summary Judgment.

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (*citing Farmer* v. Brennan 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)). "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent conduct,... having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833, 114 S.Ct. at 1977 (internal quotation marks and citation omitted). Thus, it has long been recognized that "prison officials have a duty... to protect prisoners from violence at the hands of other prisoners." *Id.* at 833, 114 S.Ct. at 1976 (quotation and alteration omitted). However, "a prison custodian is not the guarantor of a prisoner's safety." *Purcell v. Toombs Cty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citation and internal quotation marks omitted).

A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and

the official does not respond reasonably to the risk." *Carter v. Galloway*,

352 F.3d 1346, 1349 (internal quotation marks omitted); *see also Farmer*,

511 U.S. at 828, 114 S.Ct. at 1974 ("A prison official's 'deliberate

indifference' to a substantial risk of serious harm to an inmate violates the

Eighth Amendment.") (citations omitted). The three elements of a failure to

protect claim are (1) a substantial risk of serious harm; (2) the defendant's

deliberate indifference to that risk; and (3) a causal connection between the

defendant's conduct and the Eighth Amendment violation. *Brooks v.

Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015).

"When examining the first element—a substantial risk of serious

harm—the court uses an objective standard." *Caldwell*, 748 F.3d at 1099

(citation omitted). The alleged condition must be "so extreme that it poses

an unreasonable risk of serious damage to the prisoner's health or

safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).

Further, there must be a "strong likelihood" of injury, "rather than a mere

possibility," before an official's failure to act can constitute deliberate

indifference. *Brown v. Hughes*, 894 F.2d 1533, 1537 (1990) (quotations

omitted).

The second element—deliberate indifference in the context of a

failure to prevent harm—has a subjective and an objective component. *See Caldwell*, 748 F.3d at 1099. The subjective component is satisfied by evidence that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference. *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 617 (11th Cir. 2007) (*citing Farmer*, 511 U.S. at 837). The objective component is satisfied by evidence that the official "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (internal quotation marks and citation omitted).

A prisoner may advance an Eighth Amendment claim for failure to protect under two different theories, a "particularized risk" theory or a "dangerous conditions" theory.[4] *See Estate of Owens v. GEO Group, Inc.*,

---

[4] "In order to succeed on a 'prison conditions' theory, a plaintiff cannot rely simply on 'occasional [or] isolated attacks by one prisoner on another' but rather must prove 'confinement in a prison where violence and terror reign.'" *Estate of Owens v. GEO Group, Inc.*, 660 F. App'x 763, 771 (11th Cir. 2016) (per curiam) (*citing Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting *Purcell*, 400 F.3d at 1320 ("We accept that an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable." (quotation omitted))). It is surely true that "[a] prisoner has a right, secured by the [E]ighth [A]mendment to be reasonably protected from constant threat of violence ... by his fellow inmates." *Purcell*, 400 F.3d at 1320

660 F. App'x 763, 769 (11th Cir. 2016) (per curiam) (unpublished but recognized as persuasive authority). Under the "particularized risk" theory, which is the theory applicable to Plaintiff's claim in this case, the prisoner may show that he was the target of a specific threat or danger, and that the defendant was subjectively aware of the individualized danger yet failed to act to alleviate that risk. *See id.* The plaintiff must adduce evidence that the defendant had subjective knowledge of the risk of serious harm to the plaintiff. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Constructive knowledge of the risk is insufficient to establish deliberate indifference under the Eighth Amendment. So, where there are multiple defendants who, allegedly, have been deliberately indifferent, "[e]ach individual [d]efendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Further, the resulting harm may not be determinative; the essential time frame under analysis is restricted to the time period before the injury

_____

(quotation and alterations omitted). But without showing a regular or constant threat of violence, procedures used by a prison—even if deficient—do not amount to deliberate indifference or violate the Eighth Amendment's cruel and unusual punishment clause. *Harrison*, 746 F.3d at 1299-1300 (quotation omitted).  In the case at hand, Fridriksson does not pursue a "dangerous conditions" theory.

has occurred, when the official had knowledge of the substantial risk of harm but chose to act unreasonably. *See Purcell*, 400 F.3d at 1320 (courts "[can]not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment"); *see also Brooks*, 800 F.3d at 1302 ("The very fact of an injury may, in some circumstances, be a factor in assessing that ex ante risk, but it cannot be sufficient on its own to prove that a substantial risk existed.").

A prison official may escape liability on a deliberate indifference claim if the official shows, for example, that he "did not know of the underlying facts indicating a sufficiently substantial danger" and was thus "unaware of a danger", or that he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot ... be condemned as the infliction of punishment" and does not give rise to a constitutional violation. *Id.* at 838, 114 S.Ct. at 1979.

"Finally, the plaintiff must show a necessary causal link between the officer's failure to act reasonably and the plaintiff's injury." *Marbury*, 936

F.3d at 1233 (citation and internal quotation marks omitted).  With respect to causation, § 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (citation and internal quotation marks omitted). The constitutional deprivation must, in turn, be "a legal cause of [the plaintiff's] injuries." *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir. 1982).

In the present case, Fridriksson has not rebutted Defendants' evidence on any of the elements of his failure-to-protect claims. First, Fridriksson has not rebutted Defendants' evidence that he was not objectively subjected to a substantial risk of serious harm when he was housed with the cellmate who later assaulted him.  The record reflects that Fridriksson's cellmate had been evaluated by the appropriate jail officials and was determined not to pose a threat to other inmates prior to his placement in Fridriksson's cell.  Fridriksson's only evidence that his housing situation posed a serious threat of harm is the fact that the cellmate required a suicide/homicide prevention protocol *after* the assault. Clearly, once the assault occurred, the cellmate's status changed.  But to be liable for failure-to-protect, Defendants would have had to known *at the*

*time* Fridrikkson was placed with the cellmate that the cellmate posed a substantial risk of harm.  That is not the case here.[5]

On these facts, the Court concludes that Fridriksson's housing condition was not "so extreme" that it posed an "unreasonable risk of serious damage" to Fridriksson's "health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).

With respect to the second element, Fridriksson has not rebutted Defendants' evidence that they were not subjectively aware the cellmate posed a serious threat of harm to Fridriksson.  In addition to the cellmate's no-risk safety classification discussed above, notably the record reflects that Sudbury and Scott were not involved in the cellmate's safety assessment, nor is there any evidence to suggest that they were put on notice that the safety assessment was incorrect.  Further, Defendants' only involvement in the assault was their review of the incident report after the fact.

Fridriksson's only evidence regarding Defendants' subjective awareness of a "known threat" is his attestation that his cellmate was acting

---

[5] Fridriksson does say that he alerted the Alachua County Sheriff's Office hotline to his cellmate situation, ECF No. 9 at 6, but that does not establish subjective knowledge on the part of Sudbury and Scott.

"emotionally unstable" prior to the assault and that the cellmate required a homicide/suicide protocol after the attack.  These facts do not show that Sudbury or Scott had the requisite culpable state of mind.  *See Farmer*, 511 U.S. at 844 (A prison official may escape liability on a deliberate indifference claim if the official shows, for example, that he did not know of the underlying facts indicating a sufficiently substantial danger and was thus unaware of a danger).  On this record, the Court, therefore, concludes that there is no evidence Sudbury and Scott knew, or could have known, that Fridriksson's cellmate posed a threat of serious harm prior to the attack.

Third, because Sudbury and Scott were not deliberately indifferent to a serious risk of harm, Fridriksson's injuries were not "caused" by Sudbury and Scott's violation of his Eighth Amendment rights.

Accordingly, Sudbury and Scott are entitled to summary judgment on Fridriksson's failure-to-protect claims against them.  No reasonable jury could conclude that Sudbury or Scott failed to protect Fridriksson from his cellmate as contemplated by the Eighth Amendment on these facts.

### 2. Defendant Villegas' motion to dismiss is due to be granted on the grounds of qualified immunity.

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009). To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 570.

"The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).  When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.

*See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (*citing SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

Fridriksson's allegations regarding Villegas, which are taken as true, are as follows. On March 19 and 20, 2021, Fridriksson reported his cellmate's "sexually inappropriate and aggressive behaviors" to Villegas. ECF No. 9 at 6 ¶ 1. Villegas, however, did not re-locate Fridriksson to another cell. *Id*. The cellmate subsequently sexually assaulted and physically attacked Fridriksson, causing him injury. *Id*. After the assault, the cellmate was placed on a "suicide/homicide" prevention protocol. *Id*. ¶ 2. Also, after the assault, Fridriksson alleges Villegas wrote a false disciplinary report about the incident, which resulted in the loss of Fridriksson's prison privileges.[6] ECF No. 9 ¶ 3. Finally, according to Fridriksson, Villegas did not investigate the assault, question the cellmate, or provide Fridriksson with mental health counseling after he was attacked. *Id*. ¶ 4.

---

[6] Fridriksson does not describe the prison privileges that he alleges were denied. ECF No. 9 at 6 ¶ 3.

Applying the legal test discussed above for "failure-to-protect" claims and looking solely at the four corners of the Complaint, while Fridriksson may have alleged a failure-to-protect claim against Villegas, Villegas' motion to dismiss is, nonetheless, due to be granted because Villegas is entitled to qualified immunity.

Fridriksson alleges he reported his cellmate's sexually inappropriate and physically aggressive behaviors to Villegas over a two-day period. According to Fridriksson, "but-for" Villegas' failure to re-locate him after he complained, he would not have been attacked and injured by his cellmate.

To trigger a failure-to-protect claim, a plaintiff must allege that the threat rose above the background danger found in all prisons. *See Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("[B]efore Defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of an inmate's generally problematic nature."). But at this stage of the litigation, on a motion to dismiss, Fredriksson has alleged enough to state a claim.

That does not end the inquiry, however.  Because Villegas raises qualified immunity the Court must analyze whether Villegas is, nevertheless, entitled to dismissal on qualified immunity grounds.

Villegas contends that he is entitled to qualified immunity because he was acting within the scope of his discretionary duties at the jail and did not violate a "clearly established" right of Villegas by failing to re-locate him after he complained about his cellmate's behavior.

Under the doctrine of qualified immunity, a government official sued for damages for injuries arising out of the performance of discretionary functions must be "shown to have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). As the Supreme Court has explained, "qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,…' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) (citation omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful…; but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Anderson*

*v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted).

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno,* 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002)). "To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Id.* at 1234.

To determine whether an official was engaged in a discretionary function, the court considers whether the acts the official undertook are of a type that fell within the employee's job responsibilities. *Crosby v. Monroe Cty*., 394 F.3d 1328, 1332 (11th Cir. 2004) (quotation omitted). In applying this test, "[the court] look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252,

1266 (11th Cir. 2004).

In the present case, Villegas was engaged in discretionary functions at the time of the alleged assault.  Inmate care and control is a primary job responsibility for correctional officers. *See, e.g., McNeeley v. Wilson*, 649 F. App'x 717, 721 (11th Cir. 2016) (unpublished) ("[I]nmate discipline and control is a primary job responsibility for" prison and jail officials and such actions are "well within the scope of their discretionary authority."). Therefore, Villegas' acts—regardless of whether these acts were improper—were well within the scope of his discretionary authority.

Having determined that Villegas was engaged in a discretionary function, the burden shifts to Fridriksson to establish that Villegas is not entitled to qualified immunity by showing that (1) Villegas violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation.  *Holloman ex rel. Holloman,* 370 F.3d at 1264.

Fridriksson did not respond to Villegas' Motion to Dismiss, and thus failed to address his burden of showing that qualified immunity is not appropriate.  *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Nevertheless, Villegas is entitled to qualified immunity because the law was not clearly established with regard to the circumstances when a prison

guard must move a cellmate because of danger.

In *Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019), plaintiff prisoner "repeatedly asked to be transferred because he was concerned about a general lack of safety in his cell block." *Id*. at 1233-34. In letters to the warden and in verbal requests made to a correctional officer at his prison, the prisoner "told them that he had witnessed fifteen inmate-on-inmate stabbings that he attributed to gang affiliations" and "express[ed] a fear for his own safety." *Id.* at 1231, 1234. Applying these facts the Eleventh Circuit held that "this evidence was insufficient to establish deliberate indifference to a substantial risk of serious harm." *Id.* at 1234. In so holding, the Court explained that "a plaintiff must show 'more than a generalized awareness of risk' to make out a deliberate indifference claim." *Id.*

Notably, Eleventh Circuit "caselaw also establishes… that officials must possess enough details about a threat to enable them to conclude that it presents a "strong likelihood' of injury, not a 'mere possibility'." *Id*. "The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Id*. (citation omitted).

The contours of the law regarding failure-to-protect claims is highlighted in *Woodyard v. Ala. Dep't of Corr.*, 700 F. App'x 927, 933 (11th Cir. 2017), an unpublished decision, in which the Eleventh Circuit observed the lack of binding precedent which clarifies the circumstances in which threats between inmates are sufficient to allow the jury to impute knowledge of a substantial risk of harm to an officer.  In *Woodyard*, the court considered the application of qualified immunity to a failure-to-protect case in which the plaintiff inmate told the defendant prison officer that another inmate, who was drunk at the time, threatened to stab him. 700 F. App'x at 932. The officer brushed off the threat, saying that it was probably just the alcohol talking. *Id.* at 929. The inmate told the officer that he believed that the other inmate's threat was "sincere" and that the officer "needed to go to the supervisor's office now." *Id.* at 929, 932. The officer refused the request. *Id.* at 929. The inmate then went to bed and awoke to the other inmate's stabbing him. *Id.*

In determining that the prison guard did not violate the prisoner's constitutional right the *Woodyard* Court compared the facts before it to those in *Rodriguez v. Sec'y, Dep't of Corr.,* 508 F.3d 611 (11th Cir. 2007). In *Rodriguez*, the inmate plaintiff told the defendant prison officials on more

than one occasion that former gang members "wanted to kill [him]," and he referenced a specific, articulable event that caused his fear—renouncing his affiliation with the gang and a specific gang population. *Rodriguez*, 508 F.3d at 618-19, 620-21. The plaintiff inmate stated that he feared that gang members would assault him when he was released into the general population. *Id.* The inmate was released into the general population anyway, and a few hours later a gang enforcer stabbed him. *Id.* The court held that—because the inmate had relayed the threats to the defendant officials, and because of the gang-related nature of those threats, the inmate had shown that those officials had subjective knowledge of the risk of assault he faced. *Id.* at 618-22.

In view of *Rodriguez*, the *Woodyard* Court determined that a reasonable officer could conclude that the lack of gang involvement in the dispute between the inmates was a fact that materially distinguished the circumstances in that case. The court reasoned that no decision from the United States Supreme Court, the Eleventh Circuit, or the state supreme court, clearly established that the information available to the defendant officer was sufficient to apprise him of the risk that the *Woodyard* plaintiff inmate faced which required the officer to take preventative action. The

Court wrote:

> As the Eighth Circuit has recognized, "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Prater v. Dahm*, 89 F.3d 538, 542 (8th Cir. 1996). Until binding precedent clarifies the circumstances in which threats between inmates are sufficient to allow the jury to impute knowledge of such risks to an officer, we cannot say that in the circumstances of this case a refusal to act on a threat (or threats accompanied by drunkenness) amounted to a clearly established constitutional violation.

700 F. App'x at 933 (emphasis in original).   Specifically, addressing the *Rodriguez* decision, the *Woodyard* court observed:

> A gang's threat to kill someone for leaving the gang (or really for almost any other reason) could reasonably be considered more credible than a drunk inmate's threat to kill someone…. That distinction is enough to prevent *Rodriguez* from clearly establishing that [the officer]'s conduct was unconstitutional. *See Marsh*, 268 F.3d at 1032. Even if [the officer] was aware that [the other inmate] had said he would stab [the inmate] "that night" and had shoved him, we are not persuaded that *Rodriguez* clearly established that [the officer]'s response to the situation amounted to deliberate indifference.

700 F. App'x at 933.

In view of *Woodyard* and *Rodriguez*, the Court concludes that when the events took place in this case the law was not clearly established that inappropriate and aggressive behavior of a cellmate, alone, without any actual threat of physical harm, is sufficient to put a reasonable officer on

notice that the failure to relocate the cellmate constitutes a failure to protect a prisoner in violation of the Eighth Amendment.

In determining whether a right is clearly established, the relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Cottone v. Jenne,* 326 F.3d 1352, 1359 (11th Cir. 2003) (citation and internal quotation marks omitted); *see also Coffin v. Brandau,* 642 F.3d 999, 1013 (11th Cir. 2011) (en banc). "In making this inquiry, the salient question is whether the state of the law gave the [defendant] fair warning that their alleged conduct was unconstitutional." *Cottone,* 326 F.3d at 1359 (quoting *Hope,* 536 U.S. at 741, 122 S.Ct. at 2516 (alterations adopted) (quotation marks omitted)).

In this case, the Court concludes that in the absence of allegations of a specific threat of physical harm communicated to an officer an inmate does not have a clearly established right to be relocated when his cellmate displays generally aggressive and sexually inappropriate behavior.

The duty to protect must be understood in the proper context: "Prisons are dangerous places because they are filled with people society has already deemed too dangerous to leave amongst law abiding persons. Prisoners will always be at some risk of harm by being surrounded by

[such] people." *Green v. Hooks*, 2017 WL 1078646, *10 (S.D. Ga. Mar. 21, 2017); *see Marbury*, 936 F.3d at 1236 ("[t]he unfortunate reality [ ] that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.") (citation and internal quotation marks omitted).

For these reasons, the Court concludes that Villegas is entitled to qualified immunity because the law was not clearly established that in the absence of a specific threat of physical injury an inmate must be relocated to another cell after a prisoner complains generally about his cellmate's sexually inappropriate and physically aggressive behavior.

## II.  CONCLUSION

In view of the foregoing, the undersigned respectfully

**RECOMMENDS:**

1.    This case should be **DISMISSED** for failure to prosecute and for failure to comply with court orders.

2.    Independent of dismissal for failing to prosecute, Defendants Sudbury and Scott's Motion for Summary Judgment, ECF Nos. 27, should be **GRANTED** and Defendant Villegas' Motion to Dismiss, ECF No. 35, should be **GRANTED** on qualified immunity grounds.

**IN CHAMBERS** in Gainesville, Florida this 6th day of June 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.